O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| FELIPE RIVERA, AS NEXT FRIEND OF § | | |
| R.R., A MINOR, and GEORGE SANCHEZ, § | | |
| § | | |
| Plaintiffs, § | | |
| vs. § | | CIVIL ACTION NO. L-06-019 |
| § | | |
| DAVID JONES, STEPHEN YOUNG, § | | |
| HUMBERTO SOLIZ, and WEBB § | | |
| CONSOLIDATED INDEPENDENT § | | |
| SCHOOL DISTRICT, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

Pending is Defendants' Amended Motion for Summary Judgment (Docket No. 62). For the reasons herein, the motion is GRANTED.

### I. PROCEDURAL BACKGROUND

Plaintiff Felipe Rivera, a/n/f/ of R.R., filed the instant suit on February 6, 2006. On July 13, 2006, Plaintiffs filed their First Amended Complaint, which added Lauro Valdez, a/n/f of M.A., George Sanchez, and Martha Sanchez as additional plaintiffs. However, the claims of Martha Sanchez were later dismissed and a Second Amended Complaint dismissed the claims of Lauro Valdez, a/n/f/ of M.A. The current plaintiffs are Felipe Rivera a/n/f of R.R. and George Sanchez.

The incidents giving rise to this case involve the disciplining of Plaintiffs by officials and employees of Webb Consolidated Independent School District ("WCISD"). R.R. was accused of stabbing another male student with a pen during a school fight on August 31, 2005. R.R. claimed the other student attacked him first and that he only hit back in self-

1

defense, unaware that the pen in his hand punctured his victim. A teacher heard the commotion and broke up the fight, but there were no witnesses to how the incident started besides R.R. and the male student-accuser. Bruni High School Principal Stephen Young investigated the incident, found R.R.'s version incredible, and called law enforcement officers to campus as required by school policy. R.R. was then arrested for aggravated assault and later expelled following a disciplinary hearing required by school policy. The school district upheld the expulsion on appeal.

Sanchez was accused of grabbing a female student's breasts on February 14, 2006. The female student immediately told a teacher and, according to the teacher, looked distressed. Contrary to the student-accuser's account, Sanchez claimed it was the result of an accidental hallway collision, and that he might have touched her breast in the process. There were no other witnesses to this incident besides Sanchez and the student-accuser. Principal Young investigated the incident, believed the female's version, and waited a day (at Sanchez's grandmother's request) before calling law enforcement officers to campus. Sanchez was arrested and charged with indecency with a minor. He was later expelled following a school disciplinary hearing. On appeal, his expulsion was upheld by the school district.

Plaintiffs sued WCISD and several of its employees under 42 U.S.C. § 1983 for violating their federal constitutional rights. Specifically, Plaintiffs claim that they were not afforded appropriate procedural due process when they were expelled from Bruni High School for misconduct and transferred to Webb County's Juvenile Justice Alternative Education Program ("JJAEP"). In addition, they complain that they were treated differently by Defendants in violation of their equal protection rights, contending

**Defendants purposefully retaliated against and disciplined Plaintiffs and caused them constitutional injuries because their parents had been "openly critical about school policies." (Docket No. 39 ¶¶ 52, 54.) Plaintiff George Sanchez, who was a learning disabled student, also sued for violations of the Rehabilitation Act of 1973 ("RA") and Title II of the Americans with Disabilities Act ("ADA"), asserting that his expulsion arose because of disability discrimination. Plaintiffs also seek a declaration under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201** *et seq.***, that the procedures practiced by Defendants are violative of Plaintiffs' rights.**

**Defendants filed the pending amended motion for summary judgment against all claims on December 12, 2007. (Docket No. 62.) Plaintiffs responded on January 15, 2008. (Docket No. 71.) Defendants replied on February 7, 2008. (Docket No. 80.)**

## II. DISCUSSION

**A.** *Summary Judgment Standard*

**Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (2008). If the record as a whole could not lead a rational trier of fact to find for the nonmovant, then there is no genuine issue for trial.** *Matagorda County v. Law***, 19 F.3d 215, 217 (5th Cir. 1994).**

**A party opposing summary judgment may not rest upon mere allegations contained in the pleadings, unsubstantiated assertions, improbable inferences, and unsupported speculation.** *Brown v. City of Houston***, 337 F.3d 539, 541 (5th Cir. 2003). The Court does not have "a duty to sift through the record in search of evidence to support a party's**

3

opposition to summary judgment." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("The non-movant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.") Rather, the nonmovant must set forth and support by summary judgment evidence *specific* facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2513-14 (1986) (emphasis added). Lastly, material that is inadmissible will not be considered on a motion for summary judgment. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991).

Defendants object to Plaintiffs' sound recordings, certain deposition excerpts, or unsubstantiated fact statements, and Exhibits 31-34 and 36. (Docket No. 80 at 2-6.) As stated above in *Ragas*, the non-movant must identify specific evidence in the record and the Court has no duty to sift through the entire record. Unacceptable forms of evidence include Plaintiffs' hours of excerpted and barely audible audio recordings as well as references to depositions "in their entirety." The following rulings are based only on acceptable summary judgment evidence.

B. *Due Process Claims*

Plaintiffs complain that WCISD expelled them, thereby depriving them of their property interests, without affording them due process of law. Unlike suspensions, where a student is actually denied access to an education (a state-granted property interest) for a number of days, *Goss v. Lopez*, 95 S.Ct. 729, 737 (1975), Plaintiffs' expulsions did not result in a denial of education but, rather, in their being transferred to a JJAEP. No deprivation of a property interest in public education occurred. *Cf. Nevares v. San Marcos Consolidated Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997) (finding no deprivation when a student is

4

transferred to an AEP, which is similar to a JJAEP)).[1]  Plaintiffs were not "being denied access to public education, not even temporarily." *Nevares*, 111 F.3d at 26.  They were only being "transferred from one school program to another program with stricter discipline."[2] *Id.*

R.R. and Sanchez do not demonstrate that their expulsions actually deprived them of a property interest in a free, appropriate public education.  R.R. continued his freshman year at the Webb County JJAEP, obtained all his credits for his freshman year, and performed adequately on his state assessment tests.  (Docket No. 62, Ex. 3 ¶ 11; Ex. 4 at 49, 54.)  According to his mother, R.R. even received an education superior to that offered by WCISD.  (*Id.*, Ex. 5 at 19-20.)  Sanchez, on the other hand, was ordered to attend the JJAEP and even provided transportation every day, but simply refused to attend.  (*Id.*, Ex. 6 at 37; Ex. 3 ¶ 19.)  The next year, however, he attended a charter school and graduated there.  (*Id.*, Ex. 6 at 7.)  Under these facts, neither student experienced a loss of education.

R.R. and Sanchez also make reference to being deprived of a liberty interest in the "preservation of one's reputation."  (Docket No. 71 at 20.)  This mention of a liberty interest is made in passing, without elaboration, and is not mentioned in the Amended Complaint.  In any event, because Plaintiffs have not established that expulsions to a JJAEP are deprivations of a property interest, a claim of injury to one's reputation would not succeed.  *See Thomas v. Kippermann*, 846 F.2d 1009, 1010 (5th Cir. 1988) (citing *Paul v. Davis*, 96 S.Ct. 1155, 1161 (1976)) ("Damage to one's reputation alone, apart from some

---

[1] *See generally* TEX. EDUC. CODE ANN. §§ 37.009-.011 (Vernon 2006) (describing suspensions, removals to AEPs, and expulsions to JJAEPs).

[2] In a series of unpublished opinions, the Fifth Circuit has consistently applied *Nevares* to find no deprivation of a property interest in education when students are removed, transferred, or expelled to another school with stricter discipline.  *E.g.*, *Langley v. Monroe County Sch. Dist.*, No. 07-60326, 2008 WL 276084 at **1 (5th Cir. Jan. 31, 2008); *Esparza v. Bd. of Trustees*, No. 98-50907, 1999 WL 423109 at *4 (5th Cir. June 4, 1999); *Sanchez v. Friendswood Indep. Sch. Dist.*, No. 97-40395, 1997 WL 811615 at *1 (5th Cir. Dec. 9, 1997).

more tangible interest such as employment, does not implicate any 'property' or 'liberty' interest sufficient to invoke the due process clause.").

Summary judgment against Plaintiffs' Due Process claims, therefore, is GRANTED.

C. *Equal Protection Claims*

Plaintiffs allege that the school district's policy was to treat them "unequally without any rational basis for having done so." (Docket No. 39 ¶ 52.) Particularly, they allege a "class of one" claim on the theory that the defendants intentionally treated them differently because their parents were openly critical about the District's policies toward special education students. (*See Id.* ¶ 52; Docket No. 62, Ex. 6 at 77, 79-80.) Plaintiffs admit R.R. does not have a learning disability of his own, but some of his siblings do.

To bring an equal protection claim under the "class of one" theory, Plaintiffs must allege and demonstrate that each of them "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 120 S.Ct. 1073, 1074 (2000); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007). Plaintiffs have presented no evidence of similarly situated students. Even so, the evidence supports a rational basis for Defendants' treatment of R.R. and Sanchez.

1. <u>Others Similarly Situated</u>

"There is no precise formula to determine whether an individual is similarly situated to comparators." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004). To withstand summary judgment, a plaintiff need not show that two cases are identical in *all* respects, *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (emphasis added), but only that they are prima facie identical in all *relevant* respects, *Purze*

6

*v. Village of Winthrop Harbor*, 286 F. 3d 452, 455 (7th Cir. 2002). "[T]he level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high," *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), or as the Supreme Court has phrased it, the conduct must be "comparably serious," *McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817, 1825 (1973). For example, "[a]n important criterion for any comparators in this case is that the students' conduct be of a kind that would subject them to expulsion." *Rossi v. West Haven Bd. of Educ.*, 359 F. Supp. 2d 178, 182 (D. Conn. 2005).

      a. *R.R.'s Claim*

Though Defendants address the various incidents testified about in Plaintiffs' depositions, R.R. discusses only one incident in his Response to the pending motion, namely the August 2005 incident mentioned above. (Docket No. 71 at 21.) He seeks to compare his treatment with the District's treatment of "his adversarial combatant." (*Id.*) The fact that both students were in the same high school, heading to the same class, and disengaged from fighting by a teacher does not make them similarly situated. R.R. had no signs of bruising around his neck or any wounds on his body, while the other student had eight puncture wounds from R.R.'s pen. The boy was not accused of any wrongdoing but R.R. was. *See Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141 (3d Cir. 2005). While R.R. now argues that he was the true victim and that the other boy was larger and a bully, R.R. testified that he was never in fear of the boy, that they are currently friends, and that they give each other a friendly punch or shove on occasion. (Docket No. 62, Ex. 56 at 18-20, 22.) The incident required school authorities to determine whether an assault occurred and, if so, who was the aggressor. Their decision necessarily meant that the two boys were not similarly situated.

### b. *Sanchez's Claim*

In the Response to the pending motion, Sanchez points to a disciplinary action involving a scuffle between M.A. and another student. He argues that the District treated him unequally by punishing him more severely than M.A.'s attacker for engaging in misconduct similar to his incident of February 2006. The District expelled him but only suspended M.A.'s attacker for one day. The M.A. incident, however, occurred in middle school with Defendant Humberto Soliz as principal, as opposed to Sanchez's in high school with Dr. Young as principal. M.A. and the other student involved, C.E., were only eleven years old while Sanchez was eighteen. (*Id.*, Ex. 3 ¶ 13.) There were no witnesses of Sanchez's conduct but two witnesses of M.A.'s conduct. (*Id.*, Ex. 36 ¶¶ 5-8.)

Significantly, the only real similarity connecting M.A.'s incident with Sanchez's—the accusation of a male student touching a female student's breast—was not raised by M.A. until over a month after the scuffle with C.E. (*Id.*, Ex. 36 ¶¶ 5-8.) On the day of the incident, Soliz conducted an investigation. M.A. seemed calm and did not mention being sexually assaulted. Soliz's investigation suggested no crime had been committed, and he instead treated the incident as normal horseplay. (*Id.*) Soliz, therefore, did not call the police because of school policy discouraging their involvement when very young minors are involved. (*Id.*) On the other hand, Dr. Young's investigation of Sanchez's incident suggested a crime had taken place, and he called law enforcement officers to investigate Sanchez's incident further.

Because of the difference in age, policy, and severity of conduct, the M.A. incident is not reasonably close to the facts of the Sanchez incident and lacks the degree of similarity required in *McDonald* and *Neilson*.

### c. *Conclusion Re: Similarly Situated Prong*

A court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met. *Harlen Assoc. v. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001); *Neilson*, 409 F.3d at 104; *McDonald*, 371 F.3d at 1002. Plaintiffs have failed to identify or present evidence of comparably serious conduct by another high school student. Consequently, they have not showed that a genuine fact issue exists regarding this element of their equal protection claim. *See Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (school discipline case); *Harvey v. Conroe*, 148 F. Supp. 2d 783 (S.D. Tex. 2000).

### 2. No Rational Basis

Defendants argue in the alternative that if any of the incidents offered by Plaintiffs are found to be similarly situated, they have offered a rational basis for their differential treatment. "To ultimately prevail on the claim, the plaintiffs must carry the burden of 'negative[ing] any reasonable conceivable state of facts that could provide a rational basis' for their differential treatment." *Lindquist et al. v. City of Pasadena, Texas*, 525 F.3d 383, 387 (5th Cir. 2008) (quoting *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 121 S.Ct. 955, 964 (2001)) (internal quotation marks omitted). If Defendants can show that there is some rational basis for their different treatment of Plaintiffs, then summary judgment is appropriate. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007). Defendants have presented a rational basis for its disciplinary decisions, and Plaintiffs have presented no evidence which controverts that evidence.

As to R.R.'s claim, Principal Young testified that it was the first time in his experience that a student had been stabbed. (Docket No. 62, Ex. 3 ¶ 23.) To ensure the

9

safety of other students, dissuade R.R. from future violent behavior, and to send a message to other students, he punished R.R. severely. (*Id.*) Regarding Sanchez's claim, once Young accepted the female victim's account as credible, he needed to respond vigorously, given Sanchez's mature age, and demonstrate to the student body that the administration would not tolerate sexual misconduct. (*Id.*, Ex. 3 ¶ 24.) This was especially important to Young because this incident occurred shortly after a teacher was suspended for indecency with a child. (*Id.*)

Defendants' conduct was not irrational because the school district has a duty to maintain a safe school environment and may handle disciplinary matters differently among students, depending on the parties involved, the history, and the facts of each case. *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1201 (10th Cir. 2003). Given the nature and circumstances of Plaintiffs' conduct, even if disparate treatment occurred, no reasonable jury could conclude from the record that it was irrational for the Defendants to have expelled Plaintiffs or treated them more harshly than other students similarly situated.

Summary judgment against Plaintiffs' Equal Protection claims is GRANTED.

**D.** *ADA and RA Claims*

Only Sanchez, not R.R., alleges retaliation and discrimination by WCISD because he and his family members advocated for his right, as a disabled student, "to a free appropriate public education.[3] (Docket No. 39 ¶¶ 59, 61.) Relying mostly on the testimony of Rose Cruz and Martha Sanchez, his aunt, Sanchez argues in his Response that he has been retaliated against and intimidated for their advocacy of his rights.

---

[3] The ADA and RA claims against the individual defendants have been previously been dismissed, leaving WCISD as the only potentially liable defendant under these two claims. (Docket No. 43.)

At the outset, the Court observes that Sanchez's pleadings and Response to the summary judgment motion are somewhat confusing. The pleadings under the RA (*Id.* ¶¶ 55-62) seem to merge the notions of discrimination and retaliation, which are not the same thing. The allegations under the ADA (*Id.* ¶¶ 63-66) simply allege that the facts indicate a violation of the Act. Sanchez's Response to the motion merges both claims and speaks almost solely, albeit sparsely, about retaliation.

The statutory language of the ADA and RA are very similar, and both statutes are essentially anti-discrimination statutes. *Chandler v. City of Dallas*, 2 F.3d 1385, 1389 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1386 (1994) (RA); *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), *cert. denied*, 124 S.Ct. 47 (2003) (ADA). Decisions interpreting either the ADA or the RA are generally applicable to both.[4] *Delano-Pyle*, 302 F.3d at 574.

A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered. To do this, "a plaintiff must demonstrate: 1) that he is a qualified individual under the ADA, 2) that he is being excluded from participation in, or being denied the benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity, and 3) that such exclusion, denial of benefits, or discrimination is by reason of his disability."[5] *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004), *cert. denied*, 125 S.Ct.

---

[4] Different types of ADA/RA claims are recognized by the courts: discriminatory impact, refusal to make reasonable accommodations, and intentional discrimination. The Court will treat Plaintiffs' retaliation claims as claims based on intentional discrimination.

[5] The ADA reads: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2005). In the ADA the "term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (2005).

2273 (2005). The RA changes the third element to read "*solely* by reason of" a disability and imposes an added element that the program or activity receive federal financial assistance.[6] If a prima facie case is established, the burden of production shifts to the defendant to show that the plaintiff has no disability or that the plaintiff was not denied benefits or excluded from any programs solely on the basis of his disability. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). If the defendant meets its burden, "the burden shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination." *Id.*

WCISD agrees that Sanchez is a qualified individual with a disability for purposes of his ADA and RA claims. Regarding the RA claim, WCISD also agrees that there is a nexus, though "tenuous and indirect," between its receipt of federal financial assistance and its handling of the disciplinary matters that are the subject of this case. (Docket No. 62 at 57.) WCISD, however, disagrees that its conduct toward Sanchez was motivated by any discriminatory intent based on his disability or otherwise, and argues it has provided legitimate, rational reasons for disciplining Sanchez with an expulsion.[7] (*Id.*) Concerning Sanchez's expulsion, for example, WCISD asserts that he was expelled from the school district for inappropriately fondling a female student in February 2006. (*Id.* at 57-58.)

In his one-paragraph response to Defendants' arguments regarding the ADA and RA claims, Sanchez argues that "[t]here is sufficient evidence of retaliation . . . solely because of his advocacy for his rights as a disabled student." (Docket No. 71 at 23.) Without elaborating, he directs the Court's attention to the testimony of Rose Cruz and

---

[6] The RA reads: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (1999).
[7] *See supra* Part C.2.

Ms. Sanchez, and argues that the intimidation began with Sanchez "being falsely accused of having marijuana" and "continued until he was expelled." (*Id.*)

First, the marijuana incident cannot support a claim because Sanchez and the District settled and compromised any claims arising out of that incident. (Docket No. 62 at 46-48.) Furthermore, the incident occurred on Sanchez's first day of school before WCISD knew he was a special education student. Second, as stated earlier, the Court has no obligation to sift through the record to find support for a party's argument. *Ragas*, 136 F.3d at 458. Sanchez does not point to specific facts in the record, but rather refers the Court to certain depositions "in their entirety." (Docket No. 71 at 23 nn. 89, 91-92.) Nevertheless, the Court has reviewed the deposition testimony and finds that Sanchez does not carry his burden to show that WCISD's nondiscriminatory reasons are pretextual.

1. Sanchez's Testimony

Sanchez's testimony provides little support for his allegations. In his first deposition, he makes no mention of being retaliated against because of his disability. In his second deposition, he testifies that he was discriminated against, but initially cannot explain or recall why he thinks he was treated differently. (Docket No. 62, Ex. 46 at 6-10.) After given time to reflect and asked again about evidence of the District's discriminatory animus, he testifies about two incidents. First, he states that the school district was more lenient to students involved in the M.A. scuffle. (*Id.* at 5:25-7:4.) The Court already addressed this scuffle and found that the District's different handling of the M.A. incident and Sanchez incident was based on rational, nondiscriminatory factors. *See supra* Part C.2.

Second, Sanchez refers to a WCISD teacher who was suspended for indecency with a child, testifying that he "did not see the teacher get arrested" as Sanchez was. (Docket No. 62, Ex. 46 at 8:12-19.) Defendants correctly note that the police department, not the school district, decided who to arrest. They also explain that the District took a hard line against sexual misconduct and, because Sanchez's incident occurred after the teacher's incident, it made an example of Sanchez to send a clear message to the other students in the District that sexual violence would not be tolerated.

Furthermore, nothing in Sanchez's testimony shows that Defendants were motivated by discriminatory intent in reaching their decisions. In fact, Sanchez testified that at times he was actually punished less severely or not at all by Defendant Young because he was on the basketball team. (*Id.* at 7:8-10:8.) At most, Sanchez's testimony establishes his disagreement with the school's disciplinary decisions regarding him or other individuals. It does not show any discriminatory pretext for the District's disciplinary decisions.

2. <u>Ms. Sanchez's Testimony</u>

Sanchez's aunt, Martha Sanchez, relies on a number of incidents that involve conjecture, weak inferences, or behavior not related to a disability. To begin with, she raises the marijuana possession incident that was settled by an agreement. Ms. Sanchez also claims one of Sanchez's teachers made a racially insensitive remark about Sanchez's performance on a test, but this remark has no relevance to a disability. (*See id.*, Ex. 34 at 7:22-9:11.) Ms. Sanchez also claims one teacher said Sanchez had a negative attitude in class and that Superintendent Jones had an "intimidating look" in one of the special

education meetings. This evidence does not remotely establish that Sanchez was mistreated because of advocacy for disability rights.

### 3. Rose Cruz' Testimony

Rose Cruz, Sanchez's special education advocate, testified that the District bore generalized hostility toward her, which she says represented hostility by extension against Sanchez. She failed, however, to demonstrate that any alleged retaliation was due to Sanchez's learning disability. For example, she refers to the District's refusal to enroll Sanchez until his aunt first established she was his legal guardian. WCISD is obligated under the Texas Education Code to require a parent or legal guardian of a student to establish residency within the school district before the student can be enrolled. TEX. EDUC. CODE ANN. § 25.001(a)(3) (Vernon 2006). The District only asked Ms. Sanchez to establish that she was the legal guardian of Sanchez, and once proved, allowed him to attend Bruni.

Other testimony by Cruz is similarly deficient. For example, Cruz opines that school district officials were hostile or rude to her during special education meetings when one teacher answered her question with a "snip" or the meetings became "nit-picky situations." Cruz speculates that Defendant Young did not want to answer her questions because his face would turn red and that school employees seemed guarded or frustrated during special education meetings.

Defendant Young testified that the District always treated Cruz respectfully but that employees sometimes had professional disagreements with her. (Docket No. 62, Ex. 3 ¶ 30.) In addition, WCISD presents evidence showing that, of the sixteen special education

meetings held for Sanchez over three years, Cruz agreed with the outcomes of all but the expulsion meeting's.[8] (*Id.* ¶ 29.)

Altogether, Sanchez's evidence regarding his ADA and RA claims could not lead a reasonable jury to find either deliberate discrimination or retaliation based solely on or by reason of Sanchez's disability or his family's advocacy for his rights as a disabled student.

Therefore, summary judgment against Sanchez's ADA and RA claims is GRANTED.

E. *§ 1983 and Declaratory Judgment Claims*

Because this Court has found that Plaintiffs suffered from no constitutional violations, their § 1983 and Declaratory Judgment claims fail as a matter of law as to all Defendants. Accordingly, summary judgment against these claims is GRANTED.

### III. CONCLUSION

For the foregoing reasons, Defendants' Amended Motion for Summary Judgment (Docket No. 62) is GRANTED.

DONE at Laredo, Texas, this 11th day of September, 2008.

_____
**United States District Judge**

---

[8] These hearings addressed Sanchez's special education services, including his special education and regular education classes, modifications of his regular classroom work, his educational progress, and the selection of state assessment tests, all for the purpose of developing his individualized special education program. Generally, these meetings consisted of teams of individuals and lasted several hours.